UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    :
                            :
                            :
v.                          :        CRIMINAL NO: 04-30033-08-MAP
                            :
RAYMOND ASSELIN, JR         :

**DEFENDANT'S SENTENCING MEMORANDUM
AND MOTION FOR DOWNWARD DEPARTURE**

Raymond Asselin, Jr. appeared before Your Honor on August 30, 2006 and pleaded guilty to Ct 3s, Conspiracy to Commit Bribery in violation of Title 18 U.S.C. §§371 and 201, Cts 85s and 86s Conspiracy to Commit Theft Against the Government in violation of Title 18 U.S.C. §§371 and 641, and Ct 104s, Obstruction of Justice in violation of Title 18 U.S.C. § 1503. The defendant pleaded pursuant to a global plea agreement that excluded only one defendant. The Plea agreement contemplates an Offense Level 13. The defendant is free to contest the guideline calculations and to argue for a departure.

Consistent with calculations in the plea agreement, the Presentence Report arrives at an Offense Level 13, CHC I for a guideline range of 12 – 18 months. Probation agreed that the defendant is deserving of a minor role adjustment and awarded a two-level reduction. The defendant suggests that if the court were to apply a three-level reduction, (in recognition that the defendant is not a minimal participant, but is somewhat less culpable than a minor participant) for the defendant's role in the offense, the level could be reduced to Offense Level 12, CHC I for a guideline range of 10 – 16 months.

1

It is now settled law pursuant to *United States v Booker*, 125 S.Ct. 738 (2005), that when imposing sentence the Court must consider the Sentencing Guidelines and Policy Statements. Under *Jiminez-Beltre*, 440 F.3d 514 (1st Cir 2006) the Court is required to begin the sentencing process by calculating the Guideline range, including resolution of any factual disputes and any departures. Then the Court may decided whether the "other factors" identified at 18: 3553(a) warrant a variance from the guideline range. The defendant believes that under the guidelines, a departure is warranted as suggested at §2B1.1 (n.18(C)) *"There may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be warranted."*

Loss Overstates the Seriousness of Raymond Jr.'s Offense

The loss figure in counts 85s and 86s totalling $105,393 is a number the defendant cannot account for. This figure serves to drive the guideline range upward.[1] A review of both counts 85s and 86s provides no information on how the defendant could be held accountable for $105,393. However the government arrived at this sum, it apparently represents an amount that holds the defendant accountable under the relevant conduct standard for what might be reasonably foreseeable to him. As a member of the family, Raymond Jr. undoubtedly spent time at the Chatham home and thereby enjoyed the benefits of the work done by SHA employees and contractors. He also had knowledge of the campaign fund fraud in count 86s and aided and abetted the cover-up. Thus he is indirectly accountable for the loss in Counts 85s and 86s under the relevant

---

[1] By probation's calculations using the two-Group method and only two levels off for minor role, this Group II is a level 14. If the Loss level were reduced to less than $70,000, then the combined level for Cts 85 and 86 would be 12 with a final offense level 12 (Group I level 11, Group II level 12 +2units = level 14, -2 for acceptance of responsibility =Total Offense level 12.)

2

conduct rules. And the defendant did directly benefit from the carpeting placed in his own home as well as an alarm system, total value more than $9,000, neither of which he paid for. Raymond Jr. has accepted responsibility for his own actions and the benefit he received from the actions of others. Nonetheless, the offense level arrived at using the policy statements and rules governing the guidelines overstates the seriousness of Raymond Jr.'s offense.

The gravity of Raymond's offense is rooted in his family relations. To avoid participation in this offense, Raymond Jr. would have had to disavow his entire immediate family. Such an action would have meant total alienation, unthinkable for a defendant reared in an emotionally and financially secure family environment. And while there is some sympathy for his situation, he realizes that he is responsible for his actions. In consideration of the totality of the circumstances involved in this offense, the defendant submits that the offense level arrived at overstates the seriousness of his behavior. The defendant believes his offense level may appropriately be reduced by one level to Offense Level 11.

Booker requires that in addition to considering the final advisory guideline calculation, the sentencing court is mandated to consider the statutory sentencing factors at 18 U.S.C. §3553(a) among which are (a)(1), the nature and circumstances of the offense and the history and characteristics of the defendant. As the circumstances of the offense and the defendant's personal history cannot be separated from each other, we shall deal with them together.

## Nature and Circumstances of the Offense and Raymond Asselin, Jr.'s Personal History and Characteristics

Raymond Asselin Jr. is the 44-year old son of his father and co-defendant, Raymond, Sr. and his mother and co-defendant, Janet Asselin. He was born in Boston, but when he was a year old, the family moved to Springfield to be closer to Raymond Sr.'s father who lived in Chicopee and was ailing.

The defendant's life in Springfield can be described as uneventful and perhaps, ironically, predictable. He attended a good Catholic High School, Cathedral, and did well in school. He met his future wife in High School, and they married when he was 25 years old, shortly after he purchased his first home. The couple attempted to have children, but were unsuccessful. Even after the defendant underwent surgical procedures, the couple remained childless and grew distant from each other. Lisa, the defendant's wife, began a series of extra-marital affairs. Perhaps it was the stress of these attempts and Lisa's extra-marital affairs that sent them to marriage counseling. But nothing seemed to work. Lisa finally began a new affair and soon turned totally against the family.

Lisa had known for years that Raymond Sr., and Arthur Sotirion used the Springfield Housing Authority for their own benefit, much to the detriment of the people of Springfield. For whatever reason, Lisa began cooperating with the FBI, wore a body-wire even while still married and living with the defendant. Most of what Lisa was able to provide for the government is being used as evidence against the defendant and the defendant's family.

Raymond Jr. is trained in electronics. He is a registered technician with the Massachusetts Division of Professional Licensure's Board of Radio and Television Technicians. For the past ten years, Raymond has owned and operated an electronics

business in Springfield, Raytron, Inc. This business and Raymond Jr.'s interests are quite removed from the political atmosphere that permeated his immediate family. And it must be stressed that Raymond Jr.'s company was never offered a contract and never participated in the offense in that way. To be sure, Raymond Jr. always knew his father and Art Sotirion controlled the Springfield Housing Authority; he understood that benefits he received for his home and business could not possibly be free; he freely accepted the benefits incurred by being part of the Asselin family; and he cared deeply about his family's activities not being uncovered. Nonetheless, family affiliation is a strong magnet that requires enormous strength of character to pull away when the family is involved in nefarious activities. For Raymond Jr. to disavow his family's activities he would certainly need some immediate support from his wife. Perhaps they could have moved away from Springfield and started a life somewhere new. Clearly, given the circumstances of Raymond's childless marriage and his unfaithful wife, perhaps the defendant drew closer to his parents and siblings, drawing emotional support from them. Unfortunately, the "what ifs" in Raymond Jr's case have no meaning. It was not going to happen and it could not happen.

### Other Factors under 18:USC §3553(a)

As Raymond Asselin Jr. stands now before the Court, the Court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in the statute at 18 U.S.C.§3553(a)(2) i.e., (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. (B) to afford adequate deterrence to criminal conduct. (C) to protect the public from further crimes of

5

the defendant; and (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

In addressing factors (B) (C) and (D), the defendant asks the court to keep in mind that this defendant will never have occasion to commit another crime. On his own, the defendant has no propensity to crime. His criminal history is without a blemish. He would not be in this court today if he had not been connected to the Asselin family. Thus there is no need for specific deterrence or to protect the public from further crimes of the defendant. As for the factor (D), the defendant has a skill and a license in electronics. He is not in need or training or other correctional treatment.

The issue addressed in factor (A) is more problematic to deal with. There is a need here for the sentence to impose some punishment. But the public's confidence in and respect for the law will be reflected in the sentences overall. The gravity of this offense is the pervasiveness and cynical abuse of the SHA as perpetrated by Raymond,Sr, and Arthur Sotirion, and to a lesser extent, Frank Moroney. Most of the other defendants were willing pawns in the scheme and are accountable for their actions. But there must be some temperance in sentencing the lesser culpable offenders.

The defendant asks the court to consider in his case, the guideline range (after departure) which he submits is Offense Level 11, CHC I for a range of 8 – 14 months; the government's agreement that the defendant has a minor role; the circumstances of the defendant's involvement in the offense; the degree of culpability of the defendant in relation to his co-defendants; the lack of a need to deter the defendant from future crimes.

Another factor the defendant wishes the court to consider is that Raymond Jr. owns and operates a legitimate electronics business. He is the sole proprietor, a fact

which probably kept him more at arms length of the machinations of the rest of the family. He worked long hours at his business, Raytron, Inc. Should he be unavailable to work at the business, it would have to be closed. The defendant would have a difficult time starting up a new business after an extended period of downtime.

Finally, the defendant stands ready to accept whatever sentence the court finds appropriate.

Raymond Asselin, Jr
By his Attorney
Joseph F. Bellico
BBO # 028000